IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **CONNIE RANDLES**         )<br>                            )<br>                            )<br>                            )<br>    Plaintiff,             )<br>                            )<br>vs.                         )<br>                            )<br>**MICHAEL J. ASTRUE**,       )<br>COMMISSIONER OF            )<br>SOCIAL SECURITY            )<br>                            )<br>    Defendant.              )<br>                            ) | CIVIL ACTION NUMBER<br>**5:07-CV-2185-UWC** |

## MEMORANDUM OPINION

Plaintiff Connie Randles ("Plaintiff") brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking review of the final adverse decision of the Commissioner of the Social Security Administration ("SSA") that Plaintiff's disability ended as of April 1, 2005.  This Court finds the Administrative Law Judge ("ALJ") did not fully develop the record.  Therefore, for the reasons elaborated herein, the Court will **REMAND** the decision finding no disability to the ALJ for further consideration.

1

## I.  Procedural History

Plaintiff applied for a period of disability and disability insurance benefits and following a July 31, 2000 decision, the Commissioner found Plaintiff disabled as of July 9, 1997.  (R. 14.)  On July 20, 2005, the Commissioner found that the plaintiff was no longer disabled as of April 1, 2005.  (R. 24).  The Commissioner denied plaintiff's claim on reconsideration and plaintiff requested a hearing, which was held on October 24, 2006.  (R. 232-245.)  On January8,  2007, the ALJ issued a hearing decision that Plaintiff's disability ended effective April 1, 2005.  (R. 14-22.)  The Appeals Council denied Plaintiff's request for review, making the hearing decision the final decision of the Commissioner.  (R. 5-7.)  *See* 20 C.F.R. §§ 404.955, 404.981 422.201(a) (2008).  Plaintiff exhausted her administrative remedies, and this case is ripe for review under 42 U.S.C. § 405(g).

## II.  Factual Background

At the time of the hearing, Plaintiff's attorney stipulated that she was 52 years old and had in excess of a high school education.  (R. 235.)  Plaintiff's past relevant work experience is as a staff nurse, a home health nurse, and a nurse supervisor.  (R. 242-243.)  Plaintiff has not engaged in substantial gainful activity since July 9, 1997, when she was found to be disabled due to a depressive disorder, an anxiety disorder, and residuals from the resection of a brain tumor.

(R. 16.) At the hearing, the vocational expert found that the plaintiff's past relevant work experience as a staff nurse and home health care nurse was medium in exertion requirements and skilled, and that her work as a nurse supervisor was light in exertion requirements and skilled. (R. 20).

Plaintiff alleges continued disability resulting from depressive disorder, anxiety disorder, and residuals from the resection of a brain tumor. Plaintiff testified at the hearing that following her brain surgery, she began experiencing difficulties with anxiety, nervousness, forgetfulness, and her memory. (R. 19.) Plaintiff further testified that her anxiety led to her inability to work, and that she continues to suffer from this disability. (*Id.*)

### B. Treatment History

The record shows that Plaintiff had brain surgery in July 1993 for resection of a brain tumor. (R. 16.) After her surgery, Plaintiff began to experience difficulties with her memory and stopped working in July 1997 due to feelings of nervousness. (*Id.*) Plaintiff did not seek treatment from a mental health practitioner, but was prescribed anti-depressant medications by her treating physician. (*Id.*)

In August of 1999, Jon G. Rogers, Ph.D., performed a consultative evaluation and found that Plaintiff had an adjustment disorder with mixed anxiety

and depressed mood and an amnestic disorder due to her general medical condition. (*Id.*) Dr. Rogers opined that the Plaintiff's mental impairments imposed moderate restriction of daily activities, moderate constriction of interest, and moderate disruption of her ability to relate to others in a normal manner. (*Id.*) Dr. Rogers also opined that the Plaintiff's ability to understand, remember, and carry out instructions was moderately impaired, and that her ability to respond appropriately to supervision, coworkers, and work pressures in a work setting was severely impaired. (*Id.*) Accordingly, on July 31, 2000, the ALJ found that Plaintiff lacked basic mental ability for competitive unskilled work as of 9 July 1997. (*Id.*)

From February 12, 2004, to January 25, 2005, Plaintiff saw Lonnie N. Albin, M.D., on several occasions for multiple physical complaints. On April 15, 2004 and November 11, 2004, Dr. Albin's notes reflect that he prescribed Buspar to treat Plaintiff's anxiety. (R.148-149.)

On March 16, 2005, Mary Arnold, Psy.D., performed a consultative evaluation upon Plaintiff. Dr. Arnold reported that Plaintiff had not sought psychiatric treatment, despite claiming disability for anxiety and depression. (R. 156.) Plaintiff walked without impairment, and tended to sit still with an upright posture. (R. 157.) Plaintiff claimed that she groomed and dressed independently,

and managed the bills and the household, including cooking, cleaning, and laundry. (*Id.*) Plaintiff shopped for groceries, read, did cross stitch, and watched television with her husband. (*Id.*) Plaintiff also reported visiting with family on a regular basis and doing yard work and gardening. (*Id.*)

Dr. Arnold found that Plaintiff had a Global Assessment of Function (GAF) score of 62. (R. 159.) According to The American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders: DSM-IV 34 (4th ed. text revision 2000), a GAF of 62 is indicative of some difficulty in social, occupational, or school functioning. (R. 18.) Dr. Arnold diagnosed Plaintiff with adjustment disorder, high risk for diabetes, asthma by self report, past brain surgery, and symptoms of menopause. (*Id.*) This was the only occasion on which Dr. Arnold saw Plaintiff. (*Id.*) Approximately two months after her visit with Dr. Arnold, Plaintiff's disability benefits were discontinued as of April 1, 2005. (R. 32-33.)

Following Plaintiff losing her disability benefits, she sought psychiatric care from M. Elizabeth Lachman, M.D. On June 1, 2005, Dr. Lachman noted that Plaintiff's medications were Buspar, Singulair, Prevacid, and Diazide. (R. 204.) Plaintiff reported having panic attacks about once or twice a week, and reported that her sleep and appetite were fine. (R. 205). According to Lachman, Plaintiff's

mood was anxious and preoccupied with worry and was somewhat constricted, and her affect was congruent. (R. 207).

Dr. Lachman noted that Plaintiff's GAF was 55 and diagnosed her with Major Depressive Disorder, recurrent, severe, without psychotic features, and with Panic Disorder with Agoraphobia. (R. 204). Dr. Lachman increased Plaintiff's Buspar dosage, prescribed Niravam and Pexeva for panic disorder and agoraphobia, and instructed Plaintiff to begin individual therapy with a therapist to help with supportive psychotherapy and coping issues. (R. 207.) Throughout the 16 months Plaintiff saw Dr. Lachman, her diagnosis and GAF stayed the same. (R. 173-208.)

On July 7, 2005, Plaintiff told Dr. Lachman that she was doing much better and that her body felt better. (R. 202.) Plaintiff reported enjoying seeing her therapist, and was looking forward to her next visit. (*Id.*) On July 9, 2005, Dr. Lachman noted Plaintiff's bright mood and affect, although Plaintiff complained that her sleep had been poor. (R. 199.) On October 26, 2005, Plaintiff reported bothersome dreams, but indicated that she continued to enjoy her therapy. (R. 196.) Plaintiff noted that Pexeva was not working; so Dr. Lachman switched her back to Paxil C.R. (*Id.*)

On January 4, 2006, Plaintiff reported doing fairly well, and that she still

enjoyed her individual therapy. (R. 193.) Plaintiff also reported successfully fighting off several periods of depression, and her husband reported that she was doing much better. (*Id.*) On March 8, 2005, Dr. Lachman noted that Plaintiff was doing really well, and that Plaintiff had cut back her individual therapy to once every two months. (R. 190.) Plaintiff reported good sleep and appetite. (*Id.*)

On June 6, 2006, Dr. Lachman reported that Plaintiff was doing pretty well, and that she had terminated her individual therapy because of the improvement. (R. 187.) Plaintiff told Dr. Lachman how much her treatment had helped, and reported increased self-confidence. (*Id.*) On September 8, 2006, Dr. Lachman noted that Plaintiff's mood was brighter. (R. 184.) Plaintiff reported doing okay, but had been having a disturbing recurrent dream. (*Id.*)

On October 18, 2006, Dr. Lachman completed a Mental Residual Function Capacity Assessment. (R. 178-180.) In the assessment, Dr. Lachman found that Plaintiff was moderately limited in her ability to carry out very short and simple instructions and ask simple questions and request assistance. (*Id.*) Dr. Lachman also found that Plaintiff was markedly limited in the ability to remember locations and work-like procedures, understand and remember very short and simple and detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain

regular attendance, and be punctual within customary tolerances. (*Id.*) Further, Dr. Lachman found that Plaintiff was markedly limited in her ability to sustain an ordinary routine without special supervision, work in coordination with or in proximity to others without being distracted by them, make simple work-related decisions, complete a normal workday and worksheet without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (*Id.*)

Dr. Lachman also found that Plaintiff was markedly limited in her ability to accept instructions and respond appropriately to criticism from supervisors, respond appropriately to changes in a work setting, travel in unfamiliar places or use public transportation, set realistic goals or make plans independently of others, and maintain concentration, persistence, or pace. (*Id.*)

**B. ALJ's Decision**

The ALJ rendered an adverse decision on Plaintiff's claim on January 8, 2007. The ALJ considered Plaintiff's testimony and medical evidence. He found that the Plaintiff's medically determinable impairments could have reasonably been expected to produce the alleged symptoms, but found that the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. (R. 19.)

First, the ALJ relied on the fact that Plaintiff sought no psychiatric treatment until after Dr. Arnold's evaluation and the cessation of her disability benefits. (R. 19.) Next, the ALJ relied upon the Plaintiff's admission that her mental state had improved, and the notes of Dr. Lachman, which indicated that patient was responding well to BuSpar, Paxil CR, and other anxiety medication. (R. 20.)

The ALJ used Dr. Lachman's treatment notes and Dr. Arnold's opinion evidence to discount Dr. Lachman's opinion evidence that Plaintiff continued to be disabled. (*Id.*)  The ALJ gave no weight to Dr. Lachman's October 2006 opinion that Plaintiff continued to suffer significant mental limitations, finding this opinion totally inconsistent with the medical evidence of record and Dr. Lachman's own treatment notes. (*Id*.) The ALJ gave considerable weight to Dr. Arnold's March 2005 opinion evidence, even though he saw Plaintiff on only one occasion, and did not treat her. (*Id.*).

### III.  Controlling Legal Principles

A disability claimant has a heavy, but not insuperable, burden to establish entitlement to benefits. *Mims v. Califano*, 581 F.2d 1211, 1213 (5th Cir. 1978). The district court's standard or scope of review is limited to determining whether the substantial evidence support's the Commissioner's decision. *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  Additionally, the Court must determine

whether proper legal standards were applied. *Lewis v. Callahan*, 125 F. 3d 1436, 1439 (11th Cir. 1997) (citing *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987)).

Substantial evidence is more than a scintilla, but less than a preponderance. It is such evidence a reasonable mind would accept as adequate to support a conclusion. *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). In contrast, the Commissioner's legal conclusions are more closely scrutinized. "The [Commissioner's] failure to apply the correct law or to provide the reviewing Court with the sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-45 (11th Cir. 1991).

Applicable agency regulations require a sequential evaluation of adult disability claims. 20 C.F.R. § 404.1520 (1983). This is a cessation case; therefore, to determine if the claimant continues to be disabled, the ALJ must follow an eight-step evaluation process (20 C.F.R. 404.1594)

At step one, the ALJ must determine if the claimant is engaging in substantial gainful activity. If the claimant is doing so, and any applicable trial work period has been completed, the claimant is no longer disabled. (20 CFR

404.1594(f)(1)).  At step two, the ALJ must determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).  If the claimant does, her disability continues (20 CFR 404.1594(f)(2)).

At step three, the ALJ must determine whether medical improvement has occurred.  (20 CFR 404.1594(f)(3)).  Medical improvement is any decrease in medical severity of the impairment(s) as established by improvement in symptoms, signs and/or laboratory findings.  (20 CFR 404.1594(b)(1)).  If medical improvement has occurred, the analysis proceeds to the fourth step.  If not, the analysis proceeds to the fifth step.

At step four, the ALJ must determine whether medical improvement is related to the ability to work.  If it does, then the analysis proceeds to the sixth step.  At step five, the ALJ must determine if an exception to medical improvement applies.  (20 CFR 404.1594(f)(5)).  There are two groups of exceptions.  If one of the first group applies, the analysis proceeds to the next step.  If one of the second group applies, the claimant's disability ends.  If none apply, the claimant's disability continues.

At step six, the ALJ must determine whether all the claimant's current

impairments in combination are severe (20 CFR 404.1594(f)(6)).  If all current impairments in combination do significantly limit the claimant's ability to do basic work activities, the claimant is no longer disabled.  If they do, the analysis proceeds to the next step.  At step seven, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine is she can perform past relevant work (20 CFR 404.1594(f)(7)).  If the claimant has the ability to perform past relevant work, her disability has ended.  If not, the analysis proceeds to the last step.

At the last step, the ALJ must determine whether other work exists in the national economy that the claimant can perform.  If so, she is no longer disabled.  If not, her disability continues. (20 CFR 404.1594(f)(8)).

Social Security proceedings are inquisitorial rather than adversarial;" and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 120 (2000).  Indeed, the ALJ has a basic duty to fully develop the record.  *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th th Cir. 1981)

The opinion of a treating physician is to be given substantial weight in determining disability.  *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir. 1986).  The rules provide "that adjudicators must always carefully consider medical

source opinions about any issue, including issues that are reserved for the Commissioner." SSR-96-5P. For treating sources, the rules "also require that we make every reasonable effort to recontact such sources for clarification when they provide opinions on issues reserved to the Commissioner and the bases for such opinions are not clear to us." SSR 96-5P.

## IV. Analysis

Although the ALJ provided a thorough analysis and explanation of Plaintiff's treatment history and impairment, and provided reasons why Plaintiff was no longer disabled, this Court must remand the Commissioner's denial of Plaintiff's benefits. The ALJ found that Plaintiff's treating psychiatrist's treatment notes were inconsistent with her opinion that Plaintiff was disabled. This may be the case, but as SSR 95-p states, where the opinions of treating sources are unclear, it is incumbent upon the ALJ to "make every reasonable effort to re-contact such sources for clarification." (SSR 96-5p). In this case, both the opinion and the record are completely devoid of evidence that the ALJ attempted to contact Dr. Lachman, much less that the ALJ made "every reasonable effort," as SSR 96-5p requires.

This Court need not reach whether the medical evidence of record actually entitles Plaintiff to continued disability because it agrees with the Commissioner

that a "reviewing court may not reweigh the evidence." *See Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  However, it is under a continuing duty to ensure that the ALJ fully and fairly developed the record.

Therefore, upon remand, the ALJ must make reasonable attempts to contact Dr. Lachman in order to resolve the perceived discrepancies between her treatment notes and opinion in order to fully develop the record.  Additionally, the ALJ may consider the July 19, 2007 letter from Plaintiff's treating psychologist.  (R. 219).  This letter was not before the ALJ at the time of the hearing; so, the Court does not consider it as a source of error in the ALJ's decision.  However, the ALJ may consider this letter as part of the attempt to fully develop the record by resolving discrepancies between the treating physician's notes and opinion.

## V.  CONCLUSION

Therefore, by separate order, the decision ceasing benefits will be remanded for reconsideration of the discrepancies between Plaintiff's treating physician's opinion and the other medical evidence of record.

Done the 29th day of July, 2008.

_U.W. Clemon_
U.W. Clemon
United States District Judge